**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

JOHN DALY ENTERPRISES, LLC, a Florida
Limited Liability Corporation, and JOHN DALY,

**Plaintiffs,**

v.

HIPPO GOLF COMPANY, INC., a California
corporation,

**Defendant.**

_____/

**CASE NO.:**

3:08 Cv-368 J-25HTS

## COMPLAINT

Plaintiffs, John Daly Enterprises, LLC ("JDE") and John Daly ("Daly"), sue

Defendant, Hippo Golf Company Inc., (d/b/a Hippo Golf, Hippo Golf Inc., Hippo

Florida, Hippo Golf USA, Hippo Golf Company (CA) Inc.) (collectively "Hippo Golf") a

California corporation Plaintiffs hereby allege:

### Nature of the Action

1.     This action arises from the Defendant's willful infringement of JDE's

common law and federal statutory trademark rights in the JOHN DALY and Design

mark, the unauthorized use of John Daly's name and likeness in violation of § 504.08,

Fla. Stat., and breach of contract. By this action, JDE and Daly seek: damages, treble

damages, and injunctive relief for infringement of a federally registered mark under 15

U.S.C. § 1114(1); compensatory damages, treble damages and injunctive relief for false

designation of origin under 15 U.S.C. § 1125(a); trademark infringement and unfair

competition under Florida common law; and compensatory damages for unauthorized use

of John Daly's name and likeness under § 540.08, Fla. Stat., and compensatory damages

1

for breach of contract.  In this action, the Plaintiffs also seek to hold Hippo Golf liable for a judgment entered against Hippo Holdings, Ltd., under an alter ego theory of liability.

## The Parties

2.      Plaintiff, John Daly Enterprises, LLC, is a Florida limited liability company with its principal place of business located in Florida.

3.      John Daly is an individual over the age of eighteen who is a resident of Tennessee.

4.      Defendant Hippo Golf is a California corporation with its principal place of business located at 2755 Dos Aarons Way, Suite A, Vista, CA 92083.

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1338(a). This Court has supplemental jurisdiction over the Florida State law claims under 28 U.S.C. § 1367.

6.      The Defendant is subject to the personal jurisdiction of this Court pursuant to §§ 48.193(1)(a) and (b), Fla. Stat., because it is operating, conducting, engaging in, or carrying on a business venture in this state, and because is has committed tortious acts of trademark infringement and unfair competition in this state, and sold infringing product in this state, and such causes of action arose from the foregoing acts.  The Defendant is also subject to the jurisdiction of this Court under § 48.193(2), Fla. Stat., because it is engaged in substantial and not isolated activities within this State and because it entered into a contract with Plaintiffs in this State.

2

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District including, without limitation, the Defendant marketed, distributed and sold the products at issue in this lawsuit in this District.

## GENERAL ALLEGATIONS

### John Daly and John Daly Enterprises, Inc.

8.     Daly became a professional golfer in 1987, at the age of 21. In 1991, he joined the Professional Golfers' Association of America (the "PGA"). During his career, Daly has won five PGA Tour events and four international events. His biggest victories on the PGA Tour were the 1991 PGA Championship and the 1995 British Open Championship, two of golf's four major championships.

9.     Daly has been and remains one of the most popular players on the PGA Tour.

10.     In December 1999, and as a result of his popularity, Daly, along with other business partners, decided to form an entity whose purpose would be to promote, market and sell merchandise bearing Daly's name and image. That entity, John Daly Enterprises, Inc. ("JDE Inc."), operated for approximately four years, until December 31, 2003 when its assets were sold to JDE, the current branding, marketing and merchandising company of JOHN DALY branded products.

11.     The primary trademark of JDE is the John Daly lion head and swing logo with the John Daly signature (the "Primary Mark"). (The Primary Mark and all variations thereof will be hereinafter referred to collectively as the "John Daly Trademarks"). The

Primary Mark was registered with the United States Patent and Trademark Office on April 9, 2002 under Registration No. 2,559,785 and appears as follows:



12.    Daly's signature was also registered as a separate mark on September 5, 2006 as Registration No. 3138914:



13.    Daly's Lion Head was also registered as a separate mark on January 23, 2007 as Registration No. 3200989:



14.    JDE and its predecessor extensively advertised and promoted the John Daly Trademarks in the United States and throughout the world. One of its most popular promotional tools was the introduction of a John Daly Merchandising Trailer, which was used at all tournaments and events in which Daly participated, allowing fans the

opportunity to meet and greet John Daly and to purchase products bearing the John Daly Trademarks.

15.     The John Daly Trademarks are also promoted on the Internet at JDE's official website located at www.johndaly.com.

## John Daly's Relationship with Hippo/Hippo Golf

16.     Daly began his relationship with the Defendant when, on December 22, 2000, he and Hippo Holdings, Ltd. (hereinafter referred to as "Hippo") entered into an Endorsement Agreement (the "Endorsement Agreement"), pursuant to which Daly agreed to promote and endorse the Hippo branded products.  Hippo did business under other names including Outlook Sports Holdings, Ltd., Hippo Golf, Ltd., Hippo Clothing & Footwear, Ltd., and House and Sports Far East, Ltd.

17.     The Endorsement Agreement provided that Hippo could utilize Daly's name, likeness, signature, voice, statements and endorsement solely in connection with the advertisement, promotion and sale of Hippo products but not as trademarks.

18.     In January 2002, while attending the PGA Merchandise Show in Orlando, Florida, JDE Inc. discovered that Hippo had introduced and began marketing a JOHN DALY branded club.

19.     Hippo displayed items purportedly "exclusively marketed" by Hippo in Hippo Golf's trade show booths.

20.     Hippo's product catalogs listed all products in pounds, but put the addresses of both Hippo and Hippo Golf on back of catalog.

21.     Hippo Golf entered into an agreement with Brents Riordan, LLC for the sale of Daly clubs to Wal-Mart, and asserted the right to do so derived from Daly's agreement with Hippo.

22.     Hippo Golf claimed it had right to sell Daly clubs based solely on Daly's agreement with Hippo.

23.     Accordingly, on January 24, 2002, JDE Inc. notified Hippo that it was not authorized under the Endorsement Agreement to manufacture and market a JOHN DALY branded club and that the manufacture and sale of such a product violated JDE's trademark rights.

24.     On January 29, 2002, and as a result of its trademark infringement, John Daly notified Hippo that he was terminating the Endorsement Agreement.

25.     On March 6, 2002, John Daly and Hippo entered into a Settlement Agreement whereby John Daly reinstated the Endorsement Agreement. In the Settlement Agreement, Hippo acknowledged that JDE had entered into a Trademark License Agreement (the "Cornerstone License Agreement") with Cornerstone Golf, Inc. ("Cornerstone") on October 29, 2000 and that Cornerstone had the exclusive right to sell golf clubs under certain of the John Daly Trademarks.

26.     On information and belief, all invoices for royalties for Daly products sold by Hippo Golf were paid by Hippo.

### John Daly Enterprises Permits Hippo to Sell John Daly Icon Clubs

27.     On or about July 5, 2002, John Daly, acting on the advice of his agent, and as CEO of JDE Inc., notified Hippo that Hippo could "sell the John Daly icon clubs . . . thru 2002 and 2003." Accordingly, pursuant to the July 5, 2002 letter agreement (the

"Letter Agreement"), Hippo was given the limited right to sell JOHN DALY golf clubs through December 31, 2003.

28.   On February 12, 2004, consistent with the expiration of Hippo's rights, John Daly wrote to David Dixon, Chief Financial Officer of Hippo Golf, requesting that Hippo Golf "cease and desist all activity concerning the manufacture and sale of Hippo/John Daly signature merchandise and Hippo/John Daly 'Lion' branded merchandise, up to and including Golf Clubs, Golf Bags, and Golf related accessories such as gloves, bag towels, umbrellas, etc."

29.   In his February 12, 2004 letter, John Daly confirmed that Hippo's rights terminated December 31, 2003: "There shall be no rights whatsoever as to Hippo Golf to utilize the likeness, trademarks, name, signature or any other connotation bearing similarity to John Daly and/or the John Daly 'Lion' brand and applicable trademarks effective as of January 1, 2004."

30.   Notwithstanding the termination of its rights, JDE granted Hippo a three month sell off period in which to dispose of any remaining inventory of merchandise through April 1, 2004. JDE requested a monthly update on such sales in a letter dated February 12, 2004.

31.   Neither Hippo nor Hippo Golf ever provided John Daly or JDE with any accounting information regarding sales of merchandise bearing the John Daly Trademarks during the 2004 sell off period.

32.   Hippo and Hippo Golf continued to sell merchandise bearing the John Daly Trademarks subsequent to April 1, 2004.

33.   According to the sales records of the Defendant, the amount of sales realized by Hippo through the unauthorized sale of the "John Daly" branded products subsequent to the sell-off period ending April 1, 2004 was $746,695.30.

34.   If the Defendant continues to sell merchandise bearing the John Daly Trademarks, then: (a) the public will be confused, misled and deceived as to the source or origin of the Defendants' product; (b) the distinctive value and reputation of John Daly Trademarks will be diluted, impairing the value of JDE's property; (c) Hippo/Hippo Golf will continue to unfairly benefit from the immense goodwill and commercial value enjoyed by JDE in its marks; and (d) JDE will lose substantial revenues should purchasers be dissatisfied with the Defendant's product and mistakenly associate the Defendant with JDE or John Daly.

35.   Hippo and Hippo Golf continued to sell merchandise/products bearing the John Daly trademarks and refused to discontinue using the John Daly Trademarks after receiving a written cease and desist demand letter.

### Website/Unauthorized Use of Name and Likeness

25.   In addition to its unauthorized sale of merchandise and products, Hippo Golf and/or Hippo also continued to use John Daly's name and likeness on the website, www.hippo-golf.com. Such use of the John Daly's name and likeness is unauthorized and damages John Daly.

37.   The website (www.hippo-golf.com) is common website for both Hippo and Hippo Golf, and is paid for by Hippo.

38.    During the relevant time period, John Daly could have, depending upon the circumstances, received amounts ranging from $300,000.00 per year to $600,000.00 per quarter for a commercial website endorsement.

39.    Hippo Golf and/or Hippo had direct knowledge that it did not have permission to use Daly's likeness and proceeded to do so anyway.

40.    Hippo Golf and/or Hippo knew the sell-off period had expired and yet continued to make unauthorized use of John Daly's name and likeness on its commercial website for over two (2) years to promote its products.

41.    The actions of the Defendant have required JDE and Daly to retain legal counsel to represent them in this action and are obligated to pay a reasonable fee for their services.

### Hippo Golf And Hippo Are The Same Company

42.    Hippo Golf was formerly a Florida corporation with its principal address at Mosley Business Park, Mosley Street, Burton-Upon-Trent, Staffordshire DE14 1DW, England.

43.    Hippo's principal address is or was Mosley Business Park, Mosley Street, Burton-Upon-Trent, Staffordshire DE14 1DW, England.

44.    Hippo Golf is the alter ego of Hippo, a United Kingdom foreign corporation with its principal place of business located in the United Kingdom.

45.    On information and belief, David Dixon moved from working for both Hippo and Hippo Golf to strictly Hippo Golf in February of 2003. Prior to that, he was CFO of Hippo, while simultaneously Treasurer and secretary of Hippo Golf.

46.     On information and belief, the Directors of Hippo during the relevant time period were Graham Jackson (managing director), Chester Hunt (CEO) and David Dixon (CFO) and the officers and directors of Hippo Golf were Chester Hunt, Graham Jackson and David Dixon.

47.     At all times material hereto, Hippo and Hippo Golf had virtually identical senior management who disregarded corporate formalities between the companies.

48.     The corporate form of Hippo was used fraudulently and/or for improper purposes as it had no substantive business purpose other than to mislead creditors and shield Hippo Golf from liability in connection with contractual and other liability. Specifically, the fraudulent and/or improper conduct of these entities included, without limitation, using Hippo and Hippo Golf to mislead Plaintiffs by utilizing Hippo to negotiate the use of the endorsement from Daly and other rights from Plaintiffs, while operating the entities in a manner so as to direct the profits from the sale of merchandise to Hippo Golf, and shielding Hippo Golf from the contractual and other obligations owed to Plaintiffs.

49.     In addition, starting in 1998 and lasting through 2003, Hippo purchased golf clubs from China and shipped the goods to Hippo Golf to be sold by Hippo Golf. There were no formal agreements between Hippo and Hippo Golf regarding payment to Hippo for transfer of the assets, such that Hippo would negotiate and incur the expenses and obligations for the assets, while Hippo Golf, which was shielded from liability by Hippo, received the benefits.

50.     On information and belief, to promote clubs to be sold by Hippo Golf, Daly filmed an infomercial paid for by Hippo.  Hippo Golf never completely paid Hippo back for the infomercial.  Hippo used a dubbed version of the infomercial in Japan.

51.     Hippo Golf's officer has admitted that it assumed it had authority to sell Daly clubs based on Daly's agreement with Hippo because of the "common ownership of the companies" and Hippo Golf sold Daly clubs based on that assumption.

52.     On information and belief, there was no written agreement between Hippo and Hippo Golf for Hippo Golf to market any clubs in the US, much less a specific agreement concerning the marketing of Daly clubs.

53.     In addition, letters regarding alleged breach of agreements by Hippo Golf resulting from sales of products by Hippo Golf were sent by Hippo to Daly and/or his agents, and from Daly to Hippo.

54.     On information and belief, Hippo Golf never paid for rights to use the Hippo brand.

55.     On information and belief, all sales of Hippo clubs in the US were made through Hippo Golf.

56.     The alter ego nature of the relationship between Hippo and Hippo Golf, together with the fraudulent and/or improper use of the corporate form, caused damages to the Plaintiffs.

57.     A judgment in the amount of $2,734,842.22 has been entered in favor of the Plaintiffs against Hippo; Hippo Golf is liable for that judgment.

## COUNT I
## (INFRINGEMENT OF FEDERALLY REGISTERED MARKS)

58.     Plaintiffs hereby incorporate by reference and re-allege the allegations contained in paragraphs 1-57 above as though set forth fully herein.

59.     This is an action for infringement of federally registered trademarks under 15 U.S.C. § 1114(1).

60.     JDE is the owner of a federal trademark registrations covering the John Daly Trademarks, registered on the Principal Register of the United States Patent and Trademark Office on April 9, 2002 under registration No. 2,559,785; September 5, 2006 under Registration No. 3138914, and January 23, 2007 under Registration No. 3200989.

61.     The Defendant's use of the name JOHN DALY, the John Daly Trademarks, or any name or mark confusingly similar thereto, on products is likely to cause confusion, mistake and deception of purchasers as to source or origin of such products.

62.     As a result of the unauthorized sales by Hippo Golf, consumers are likely to purchase Hippo Golf's products believing them to be endorsed or sponsored by JDE.

63.     JDE has no control over the quality of the products offered by Hippo Golf, and because of the confusion as to source, JDE's favorable goodwill with respect to its registered mark is subject to diminution by Hippo Golf.

64.     Hippo Golf 's use of the John Daly Trademarks has caused damage to JDE and has also resulted in the diminution of the exclusive rights which JDE formerly enjoyed in connection with its registered trademark.

65.    Hippo Golf's infringement has been willful and deliberate, and designed specifically to trade upon the enormous goodwill associated with the John Daly Trademarks.

66.    The goodwill associated with the John Daly Trademarks is of enormous value and JDE has already suffered, and stands to suffer further irreparable harm should Hippo Golf's infringement be allowed to continue.

67.    Hippo Golf's infringement constitutes a violation of 15 U.S.C. § 1114(1) and will continue unless enjoined by this Court.

## COUNT II
## (FALSE DESIGNATION OF ORIGIN)

68.    Plaintiffs hereby incorporate by reference and re-allege the allegations contained in paragraphs 1-57 above as though set forth fully herein.

69.    This is an action for false designation of origin and unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

70.    Hippo Golf's use of the name JOHN DALY and the John Daly Trademarks in interstate commerce constitutes a false designation of origin and/or a false description or representation, which is likely to deceive and mislead consumers into believing that Hippo Golf's products originate from JDE, or are otherwise affiliated with, licensed, sanctioned or endorsed by JDE.

71.    Hippo Golf's false designation of origin constitutes a violation of 15 U.S.C. § 1125(a).

72.    JDE has no control over the nature and quality of the product offered by Hippo Golf and any failure, neglect or default by Hippo Golf in providing its goods will and does reflect adversely on JDE as the believed source or origin thereof, hampering

efforts by JDE to continue to protect its outstanding reputation for high quality goods, resulting in either a loss of sales thereof, a diminution in JDE's reputation, and the need for considerable expenditures to promote its goods under its mark, all to the irreparable harm of JDE.

## COUNT III
## (COMMON LAW TRADEMARK
## INFRINGEMENT AND UNFAIR COMPETITION)

73.     Plaintiffs hereby incorporate by reference and re-allege the allegations contained in paragraphs 1-57 above as though set forth fully herein.

74.     This is an action for trademark infringement under the common law of Florida.

75.     In addition to the rights arising under its federal trademark registration, JDE owns and enjoys common law rights in connection with its use of the John Daly Trademarks, which rights are superior to any rights which Hippo Golf may claim in and to such marks.

76.     Hippo Golf's use of JOHN DALY name and JOHN DALY Trademarks in connection with the sale of golf clubs and other golf related merchandise is likely to cause confusion as to source or origin, and consumers are likely to associate such goods with, and as originating from JDE.

77.     Hippo Golf's infringement has damaged JDE and will continue unless enjoined by this Court.

78.     JDE has no plain, speedy or adequate remedy at law because so long as the Hippo Golf continues to infringe on the JOHN DALY Trademarks, the public will continue to be confused and JDE will continue to sustain a loss of goodwill.

79.     Upon information and belief, Hippo Golf's infringement has been willful, wanton and gross and warrants an award of punitive damages under Ch. 768, Fla. Stat. and attorneys' fees under § 57.105, Fla. Stat.

## COUNT IV
### (UNAUTHORIZED USE OF NAME AND LIKENESS BY JOHN DALY PURSUANT TO § 540.08, FLA. STAT.)

80.     Plaintiffs hereby incorporate by reference and re-allege the allegations contained in paragraphs 1-57 above as though set forth fully herein.

81.     Pursuant to the Endorsement Agreement, Daly granted rights to the Defendant that permitted Hippo to use his name and likeness in the marketing and promotion of golf merchandise. Any such rights granted to the Defendant under the Endorsement Agreement terminated on December 31, 2003.

82.     The Endorsement Agreement did not give Hippo the right to use Daly's name and likeness indefinitely, but instead specified a definite period of time for which Daly was compensated. That period of time terminated on December 31, 2003.

83.     Any use of Daly's name or likeness by Hippo or Hippo Golf subsequent to December 31, 2003 was unauthorized. This unauthorized use has damaged Daly.

## COUNT V

### (BREACH OF CONTRACT (JULY 5, 2002 LETTER AGREEMENT))

84.     Plaintiffs hereby incorporate by reference and re-allege the allegations contained in paragraphs 1-57 above as though set forth fully herein.

85.     On July 5, 2002 JDE entered into the Letter Agreement with the Defendant pursuant to which Hippo was authorized to sell JOHN DALY golf clubs and pay royalties on such sales to JDE.

86.     Although the Defendant made initial royalty payments based upon sales of JOHN DALY golf clubs in accordance with the Letter Agreement, these payments ceased shortly after the execution of the Letter Agreement. The Defendant has continued to sell JOHN DALY golf clubs without paying JDE the required royalties.

87.     The Defendant breached the Letter Agreement by: (1) failing to make the required royalty payments to JDE during the time period in which the Defendant had authorization to sell products; and (b) selling products bearing the JOHN DALY name following expiration of the terms of the Letter Agreement and the subsequent three month sell-off period.

88.     As of April 2, 2004, the Defendant owed at least $125,000.00 to Plaintiffs under their agreements and to date, this amount has not been paid.

89.     The Defendant also sold 9,694 "John Daly" branded "golf kits" between January 1, 2004 and January 31, 2005.

90.     Plaintiffs were to receive, as a royalty, $5.00 per golf kit, causing the amount payable to Plaintiffs to be $48,470.00.

91.     Plaintiffs have not received any portion of this royalty amount to date.

92.     During the sell-off period from January 1, 2004 to April 1, 2004, the Defendant sold "John Daly" branded products in the amount totaling $456,297.40.

93.     Plaintiffs have not received any form of payment or consideration in relation to such sales.

94.     Payment should be calculated on the basis of John Daly's average royalty rate at the time, which was approximately 5% to 7% of gross sales. Plaintiffs therefore assert that it should receive 6% of $456,297.40, which is $27,377.84.

95.     As a result of the Defendant's breaches of contract, JDE suffered damages.

## COUNT VI
## ACTION ON JUDGMENT

96.     Plaintiffs hereby incorporate by reference and re-allege the allegations contained in paragraphs 1-57 above as though set forth fully herein.

97.     On October 17, 2007, in the United States District Court, Southern District of Florida, a Default Final Judgment Re: Damages As To Hippo Holdings, Ltd. Only, was given and made by that court in favor of Plaintiffs against Defendant Hippo Holdings, Ltd., in an action in which these Plaintiffs were Plaintiffs, and Defendant Hippo Holdings, Ltd. was Defendant, for the sum of $2,734,842.22, which judgment bears interest from the date of the judgment. A true and correct copy of the judgment is attached hereto as Exhibit "A".

98.     The judgment remains wholly unpaid. Plaintiffs are the owners of the judgment.

99.     As set forth more fully above, Hippo Golf is the alter ego of Hippo.

100.    Furthermore, the corporate form of Hippo was used fraudulently and/or for improper purposes as it had no substantive business purpose other than to mislead creditors and shield Hippo Golf from liability in connection with contractual and other liability. Specifically, the fraudulent and/or improper conduct of these entities included, without limitation, using Hippo and Hippo Golf to mislead Plaintiffs by utilizing Hippo to negotiate the use of the endorsement from Daly and other rights from Plaintiffs, while operating the entities in a manner so as to direct the profits from the sale of merchandise

to Hippo Golf, and shielding Hippo Golf from the contractual and other obligations owed to Plaintiffs.

101.   The alter ego nature of the relationship between Hippo and Hippo Golf, together with the fraudulent or improper use of the corporate form, caused damages to the Plaintiffs.

102.   As a result, Hippo Golf is liable to Plaintiffs for the judgment referenced above.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs John Daly Enterprises, LLC and John Daly demand a judgment against the Defendant for the following relief:

A.   That the Court pierce the corporate veils of Hippo and Hippo Golf and permit the Plaintiffs to execute their judgment against Hippo on its alter ego, Hippo Golf;

B.   That a temporary and permanent injunction be entered restraining and enjoining Hippo Golf, its alter egos, partners, affiliates, officers, servants, agents, employees, attorneys and representatives, and each of them, and those parties acting in concert or participating with them, from using John Daly's name and likeness in any manner and using any name or mark which is confusingly similar to the John Daly Trademarks in connection with the rendering of golf products;

C.   That an accounting of profits Hippo Golf, and its alter ego, Hippo, have wrongfully obtained from their use of the John Daly name and John Daly Trademarks be ordered;

     D.     That an accounting of all profits from the sale of goods by the Defendant during the time period in which the unauthorized use of John Daly's name or likeness occurred be ordered;

     E.     Compensatory damages under 15 U.S.C. § 1115;

     F.     Treble damages, costs and attorneys' fees under 15 U.S.C. § 1115;

     G.     Compensatory damages, punitive damages, profits, attorneys' fees, costs and such other relief deemed just and proper.

**ADAMS & REESE, LLP**
Lydia A. Jones
Music Row
901 18th Avenue South
Nashville, TN 37212
Telephone: 615-259-1450
Facsimile: 615-259-1470
*Motion to Appear Pro Hac Vice will follow*

And

**SMITH, GAMBRELL & RUSSELL, LLP**

By: _____
Steven E. Brust
Florida Bar # 083209̶
Scott S. Gallagher
Florida Bar # 0371970
50 N. Laura Street, Suite 2600
Jacksonville, Florida 32202
Telephone: (904) 598-6107
Facsimile: (904) 598-6207
Attorneys for Plaintiff, John P. Daly

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-61505-CIV-ZLOCH

JOHN DALY ENTERPRISES, LLC,
and JOHN DALY,

      Plaintiffs,

vs.                          **DEFAULT FINAL JUDGMENT Re: DAMAGES
                              AS TO HIPPO HOLDINGS, LTD. ONLY**

HIPPO HOLDINGS, LTD.,

      Defendant.
_____/

THIS MATTER is before the Court upon Plaintiffs' Motion For Final Judgment On Damages Against Hippo Holdings, Ltd. (DE 39). The Court has carefully reviewed said Motion and the entire Court file and is otherwise fully advised in the premises.

The facts and procedural history of the above-styled cause are set out in the Court's prior Order (DE 38). In said Order the Court entered Default Final Judgment as to Hippo Holdings, Ltd. as to liability only and ordered Plaintiffs to file with the Clerk of the Court documentation necessary to establish damages, costs, and fees. Plaintiffs have filed such documentation, which the Court allowed to be filed under seal. DE 45.

## I. Federal Trademark Claims

The Lanham Act allows a successful plaintiff "to recover (1) [the] defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a) (2006). In the instant Motion (DE 39), Plaintiffs seek to recover actual damages for sales of "John Daly" branded merchandise after

EXHIBIT "A"

the agreed sell-off period. Plaintiffs premise their damages under
this Section for the time after the sell-off period on Defendant's
profits. To recover damages premised on Defendant's profits under
§ 1117(a), Plaintiffs are only required to prove Defendant's sales.
The burden is on Defendant to prove that its profits were actually
lower by proving its costs and deductions. 15 U.S.C. § 1117(a)
(2006). As this is a Default, Defendant has made no such showing.
Therefore, Defendant's total sales of infringing products will be
considered its profits. Id. Plaintiffs have produced evidence
establishing that Defendant's sales of "John Daly" branded products
after the sell-off period totaled $746,695.30. DE 46.
Accordingly, Plaintiffs are entitled to recover $746,695.30 as
damages for Defendant's infringement of Plaintiffs' rights under 15
U.S.C. §§ 1114(1) and 1125(a).

Section 1117(a) explicitly authorizes the Court to exercise
its discretion to enter judgment for such sum as the Court shall
find to be just "[i]f the court shall find that the amount of the
recovery based on profits is either inadequate or excessive." 15
U.S.C. § 1117(a). Such recovery is "subject to the principles of
equity" and "according to the circumstances of the case." Id. In
this case, the Court finds that the amount premised on Defendant's
profits is neither inadequate nor excessive. Accordingly,
Plaintiffs shall recover as damages only the amount shown to be
Defendant's profits derived from their willful infringement of

Plaintiffs' rights under both 15 U.S.C. §§ 1114(1) and 1125(a).

Section 1117(a) also explicitly awards costs to a prevailing plaintiff. 15 U.S.C. § 1117(a). John Daly Enterprises and John Daly are prevailing plaintiffs in the above-styled cause. See DE 38. The Court notes that Plaintiffs' costs in this action are not separately delineated for the Court to review. Rather, they are scattered throughout Plaintiffs' counsels' time sheets, and many are not contemplated by 28 U.S.C. § 1920. The Court finds that Plaintiffs shall recover their filing fee ($250.00) and costs for the two summonses served ($35.00 each). Accordingly, Plaintiffs shall recover $320.00 as costs for the successful prosecution of this action.

Further, § 1117(a) allows a plaintiff to recover attorney's fees in the exceptional case. 15 U.S.C. § 1117(a). The "exceptional case" has been described as one involving willful infringement. J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition 30:100 (2007). In its prior Order (DE 38), the Court found that Defendant's infringement was willful. Thus, attorney's fees are proper in this "exceptional case." Plaintiffs request $53,718.65 in attorney's fees. The Court has carefully reviewed the Exhibits supporting Plaintiffs' request for attorney's fees and has found numerous entries which are excessive. Therefore, rather than piecemeal comb over Plaintiffs attorney's fees, the Court will exercise its discretion and reduce the

requested amount by 20%.  See Loranger v. Stierheim, 10 F.3d 776,
783 (11th Cir. 1994).  Accordingly, Plaintiffs shall recover
$42,971.92 in attorney's fees for the successful prosecution of
this action.

## II. State Law Unfair Competition Claim

Florida's statute governing the unauthorized publication of
name or likeness permits a successful plaintiff to recover
compensatory and punitive damages.  Fla. St. § 540.08 (2007).
Here, Plaintiffs have shown that Defendant has made unauthorized
use of Plaintiff John Daly's name and likeness for at least two
years and that the market value of such name and likeness was at
least $300,000.00 per year.  Accordingly, Plaintiffs shall recover
$600,000.00 in compensatory damages for their claim made under Fla.
St. § 540.08.  The same Section also allows an injunction to issue,
and this Court has enjoined Defendant by prior Order.  DE 38.

The Court looks to Florida law when analyzing the propriety of
a punitive damage award under Fla. St. § 540.08.  Browning-Ferris
Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257,
278 (1989)("[W]here state law provides the basis of decision, the
propriety of an award of punitive damages for the conduct in
question . . . [is a] question[] of state law.").  Under Florida
law, punitive damages are appropriate under § 540.08 where there is
substantial evidence in the record showing that the defendant
undertook the action knowingly without permission.  See Sun Int'l

4

Bahamas, Ltd. v. Wagner, 758 So.2d 1190, 1191 (Fla. App. 2000); see also Weinstein Design Group, Inc. v. Fielder, 884 So.2d 990, 1001 (Fla. App. 2004)(holding punitive damages award inappropriate where "there is no evidence of intentional, malicious misconduct, undertaken with knowledge that injury to [Plaintiff] would result").    In the instant action, the Court has found that Defendant "used without authorization John Daly's name and likeness" in violation of Fla. St. § 540.08.  DE 38.  Plaintiffs have shown that Defendant held limited contractual rights to sell goods branded with Plaintiff John Daly's name or likeness. However, such rights expired at the close of the contract and Defendant's right to use Plaintiff John Daly's name and likeness terminated.   Therefore, the Court finds that Defendant undertook these actions wilfully and knowingly without permission. Accordingly, punitive damages are appropriate in this case. Plaintiffs' actual damages are $600,000.00, as shown above.  Under Florida law, punitive damages awarded under § 540.08 generally may not exceed three times the amount awarded as compensatory damages. Fla. St. §  768.73(1)(a)(1) (2007); see Sun Int'l, 758 So.2d at 1191 (applying § 768.73 to an action under § 540.08).  Since the Court finds punitive damages applicable to the instant action and Plaintiff's request for $1,200,000.00 in punitive damages falls below the treble damages contemplated by the statute, Plaintiffs shall recover $1,200,000.00 in punitive damages for their claim

under Fla. St. § 540.08.

### III. <u>Breach of Contract Claims</u>

In contract law, the usual measure of damages for breach is the plaintiff's expectation damages. <u>Lowery v. Alabama Power Co.</u>, 483 F.3d 1184, 1214 n.66 (11th Cir. 2007). Plaintiffs have shown evidence of what was their expected return from the breached agreements. First, Plaintiffs claim unpaid royalties of $125,000.00. Plaintiffs have produced evidence that Plaintiffs are owed this amount. DE 39, Ex. B. Accordingly, Plaintiffs shall recover $125,000.00 on this claim.

Second, Plaintiffs claim unpaid royalties of $5.00 per "John Daly" branded golf kit sold. Plaintiff's Amended Complaint (DE 6) contains a copy of the settlement agreement between Plaintiffs and Defendant. DE 6, p. 31. Said agreement reveals a royalty of $5.00 per set of "John Daly" golf clubs sold. Plaintiffs' evidence of Defendant's sales records shows that 3,971 kits were sold during the sell-off period. DE 46. Plaintiffs also show that they have not been paid royalties on these sales. DE 39, Ex. A. Accordingly, Plaintiffs shall recover $5.00 for each of the 3,971 golf kits sold during this period, for a total of $19,855.00 on this claim. Since Plaintiffs will recover all of Defendant's profits for sales made after the sell-off period, Plaintiffs shall recover no royalty on these sales.

Lastly, Plaintiffs claim unpaid royalties ranging from 5% to

7% for "John Daly" branded merchandise during the sell-off period. As shown above, Plaintiffs have demonstrated and will recover a $5.00 royalty owing to them for these sales. Accordingly, Plaintiffs shall recover nothing on this last contract claim. Thus, Plaintiffs shall recover a total of $144,855.00 for their three breach of contract claims.

### IV. Conclusion

Plaintiffs are entitled to and shall recover the following in damages, fees, and costs in the above-styled cause: $746,695.30 in damages on their federal trademark claims, $320.00 in costs, $42,971.92 in attorney's fees, $600,000.00 in compensatory damages for the unauthorized publication of Plaintiff John Daly's name and likeness, $1,200,000.00 in punitive damages for the unauthorized publication of Plaintiff John Daly's name and likeness, $125,000.00 for unpaid royalties, and $19,855.00 also for unpaid royalties. Thus, Plaintiffs shall recover a total of $2,734,842.22 in damages, costs, and fees.

Accordingly, after due consideration, it is

**ORDERED AND ADJUDGED** as follows:

1. The Court has jurisdiction over the parties hereto and the subject matter herein;

2. Plaintiffs' Motion For Final Judgment On Damages Against Hippo Holdings, Ltd. (DE 39) be and the same is hereby **GRANTED;**

3. Plaintiffs do have and recover $2,734,842.22, together with

interest thereon at a rate of 4.24% per annum, in damages, fees, and costs from Defendant Hippo Holdings, Ltd., for all of which let execution issue;

4. Pursuant to Federal Rules of Civil Procedure 55 and 58, Default Final Judgment be and the same is hereby **ENTERED** in favor of Plaintiffs John Daly and John Daly Enterprises, LLC and against Defendant Hippo Holdings, Ltd.; and

5. To the extent not otherwise disposed of herein, all pending Motions are hereby **DENIED** as moot.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this ___17th___ day of October, 2007.

_____
WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

All Counsel of Record

8